## AUGUSTUS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8586.

Circuit Court of Appeals, Sixth Circuit.

Feb. 14, 1941.

Writ of Certiorari Denied May 26, 1941.

See 61 S.Ct. 1095, 85 L.Ed. ——.

Erwin N. Griswold, of Cambridge, Mass. (Orville Smith, of Cleveland, Ohio, and Erwin N. Griswold, of Cambridge, Mass., on the brief), for petitioner.

Berryman Green, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ARANT, Circuit Judge.

Petitioner requests a review of redeterminations of deficiencies in her income taxes for the years 1935 and 1936, in the amounts of $73,142.92 and $41,386.34, respectively. The facts are stipulated.

Daniel Good died in Buffalo in 1922, and his will was admitted to probate in Erie County, New York. His widow, Sarah E. Good, and two daughters, Margaret Jane Good and petitioner, survived him. Seymour H. Knox had been named as co-executor and trustee with Mrs. Good, but he predeceased the testator and the widow was appointed sole executrix and became sole trustee, in which latter capacity she acted until her death in 1928.

The testator made several specific bequests and then directed his executors to deliver one-fourth of the residuum to each of his daughters and the remaining one-half to trustees, to pay the income therefrom to his wife during her life. Mrs. Good was given the right to consume the principal of the trust fund and the power to dispose by will of one-half of whatever remained at her death,[1] but exercised neither.

At her mother's death, petitioner received from the trust certain securities, which she sold in 1935 and 1936. The question here presented is whether the property was acquired in 1922, when the testator died, as held by the Board, or in 1928, when the trust terminated, as contended by petitioner, within the meaning of

26 U.S.C.A. Int.Rev.Code, § 113(a) (5),[2] 48 Stat. 680, which reads as follows:

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

* * *

"(5) Property transmitted at death. If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition."

Claiming that, under this statute, only vested interests are acquired at the decedent's death and contending that the will created in her only a contingent interest, petitioner maintains that she did not acquire her interest until it became vested at her mother's death. The Commissioner contends that it is immaterial whether the will gave her a vested or contingent interest, inasmuch as all property is acquired, under the statute, at the decedent's death; but that, in any event, the interest she acquired at her father's death was a vested interest.

The language of the section is not entirely free from ambiguity. In the resolution of that ambiguity that interpretation should be adopted which will, in the greatest measure, effect congressional purpose. It would certainly not be illogical or unnatural to consider a decedent's death the time when a beneficiary acquires property from him, whatever its nature, though for taxation purposes there might be some practical reason for selection of some later date. In this connection it will be borne in mind that the value of the deceased's property at death is the basis upon which the estate tax is computed. Whatever gain was realized between the deceased's acquisition of the property and his death is thereby made to bear its rightful share of the tax burden.

The increase in the value of the property, if any, after decedent's death, is taxable when realized and to him who realizes it. To achieve this end appears to have

[1] Item Eleventh provided, in part: "(3) I hereby give to my said wife and expressly invest her with power and authority to dispose of one-half of the balance of said fund so invested in trust for her by her last will and testament in such manner as to her may seem best;

and the other one-half of the balance of said trust fund I hereby give, devise and bequeath to my legal heirs and assigns forever."

[2] This section was identical in the Revenue Acts of 1934 and 1936.

been the purpose of the language here under consideration each time it has been enacted in a revenue act. To realize a gain, within the meaning of this section, there must be a sale. The value established in that manner is necessarily compared with value at some previous date in determining the extent of taxable gain, if any. The value of the property at the date of its acquisition by the taxpayer is the date selected by the Congress. To us, in view of the apparent purpose of the Congress, it seems reasonably clear that "the date of such acquisition" was intended to mean the death of the person from whom the property, whether it was a vested or contingent remainder, was acquired. The value of the property at that time has been taxed to the estate. All increment between that date and the date of sale is taxable and, unless Congress shows an intent to make an apparently unwarranted exemption of some part of the subsequent increment, reason argues that it was not the Congressional intent to exempt any. To us it seems that the foregoing considerations indicate with fair clearness that Congress intended the "time of such acquisition" to be the decedent's death.

But, the taxpayer argues, this view, however rational it might be upon an original consideration of the section, is not open for our adoption, because circumstances preceding and following passage of the statute show clearly that Congress intended "the time of such acquisition" to be decedent's death only if his death created in the beneficiary a vested remainder. We proceed to a consideration of that contention.

The language of § 113 (a) (5) was first used by Congress in § 202 (a) (3) of the Revenue Act of 1921, 42 Stat. 229, and was reenacted in § 204 (a) (5) of the Acts of 1924 and 1926, 26 U.S.C.A. Int.Rev.Acts, pages 8, 151, respectively. It appears that the phrase "at the time of acquisition" was borrowed from Regulations promulgated pursuant to the Revenue Act of 1918, which the Bureau of Internal Revenue in 1920 construed to mean at the deceased's death,

if the remainder was vested, but at the occurrence of the condition upon which the remainder was limited, if it was contingent. See O. D. 727, 3 Cum.Bull. 53 (1920).

Neither the Regulations, the Board of Tax Appeals, nor the courts had construed the section with reference to our question[3] when an entirely different section was substituted in the 1928 Revenue Act. Section 113(a) (5), 26 U.S.C.A. Int.Rev.Acts, page 380. Hence there was no authoritative interpretation of this language prior to the enactment of the 1928 Act and it may be said with substantial accuracy that whatever ambiguity of meaning the language had in the beginning it still had.

This uncertainty was at least partly responsible for a proposal to substitute a provision in the Revenue Act of 1928, expressly making the decedent's death the date of acquisition in all cases. A bill was introduced in the House which changed the section to read as follows: "If the property was acquired by bequest, devise, or inheritance, or by a decedent's estate from the decedent, the basis shall be the fair market value of such property *at the time of the death of the decedent.*" (Italics ours.)[4]

The Committee on Ways and Means, explaining the change, said:

"In view of the decision of the Court of Claims in McKinney v. United States[5] [that gain or loss on the sale by an executor should be determined on the basis of the cost of the property to the decedent], it is desirable specifically to provide what basis shall be used in determining gain or loss on the sale of property by an estate. It is believed that the basis should be the value of the property on the date of the decedent's death, and this rule is incorporated in section 113 (a) (5).

"It is also provided, in the same paragraph, that the basis in case of a sale by a beneficiary shall be the value of the property on the date of the decedent's death.

"Under existing law, the basis in such a case is the value at the date of 'acquisition,' *which is indefinite and has given rise to controversy. The value on the date of death affords an equitable and*

---

[3] Cf. S.M. 4640, V-1 Cum.Bull. 60 (1926). See also I.T. 1622, II-1 Cum. Bull. 135 (1923); Sol.Op. 35, 3 Cum. Bull. 50 (1920).

[4] The taxpayer concedes that, had this language become a part of the statute, the date of the death of the decedent would have been the basic date in all cases.

[5] 1926, 62 Ct.Cl. 180, certiorari denied 1926, 273 U.S. 716, 47 S.Ct. 108, 71 L. Ed. 855. The decision in the McKinney case was later disapproved in Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399.

*more readily determinable basis."* (Italics ours.)

The provision was changed by the Senate to read as follows: "If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer."

In its report on the foregoing changes, the Senate Finance Committee said the House Bill did not take care of a number of situations that frequently arise. It is significant, we think, that their report made no distinction between interests vested and contingent at death and evidenced no quarrel with the position that the date of death was an equitable and practical basic date in cases where the specific property sold by a beneficiary had been owned by the decedent and the question was not complicated by application of the provision to cases where the executor puchased the property after decedent's death or to cases of transfers in contemplation of death. Senate Report No. 960, 70th Congress 1st Session, p. 26. In conference the House representatives receded, and the Senate Bill was enacted as § 113(a) (5) of the Act. It was reenacted in the Revenue Act of 1932. Section 113(a) (5), 26 U.S.C.A. Int.Rev.Acts, page 515.

Prior to the enactment of the Revenue Act of 1934, the Board of Tax Appeals and the courts, influenced no doubt by administrative construction,[6] in construing the language then readopted had held that whether a remainderman had acquired property within the meaning of this provision at the time of decedent's death depended on whether his interest was vested or contingent at that time. Kalb v. Commissioner, 15 B.T.A. 886; Pringle v. Commissioner, 9 Cir., 64 F.2d 863. See also Chandler v. Field, 1 Cir., 63 F.2d 13; Molter v. Commissioner, 7 Cir., 69 F.2d 7, 11; Griscom v. Commissioner, 22 B.T.A. 979. From this it is urged that settled rules of statutory construction require the conclusion that Congress meant to adopt this judicial interpretation. Cf. Reynolds v. Commissioner, 4 Cir., 114 F.2d 804. Many of the decisions, however, were sufficiently recent when the change made in the 1934 Act was under consideration that they may well have been overlooked. This change was classed as a minor one and discussion of other questions dominated the hearings.

More significant is the fact that there is no evidence that any of these cases were considered at any stage of the legislative proceedings.

In December, 1933, a sub-committee of the Committee on Ways and Means of the House, stating that the case of Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L. Ed. 457,[7] which was the only case ever mentioned, had "defined the 'date of acquisition' [under the pre-1928 wording] to mean the date of death *in the case of all property* passing by bequest, devise and inheritance, whether real or personal," proposed that the language of the Acts of 1921, 1924 and 1926 be reenacted in § 113 (a) (5) of the Act of 1934 *"so that a uniform basis rule may be required in the case of property passing at death, whether real or personal."* [8] The Committee so recommended, and the language was enacted.

---

[6] See G.C.M. 10260, XI-1, Cum.Bull. 79, 80 and references in footnote 3, supra.

[7] Decided in January, 1930.

[8] With respect to § 113(a) (5) of the Revenue Act of 1932, the Subcommittee said (p. 17):

"Section 113(a) (5) of the Revenue Act of 1932 is a reenactment of a similar provision contained in the 1928 act. The change in the 1928 act was made because there was some doubt as to the meaning of the term 'date of acquisition,' which was the term used under the Revenue Act of 1926. Since the 1928 act was passed, the Supreme Court has defined 'the date of acquisition' to mean the date of death *in the case of all property passing by bequest, devise, and inheritance, whether real or personal.* (Brewster v. Gage, 280 U.S. 327 [50 S.Ct. 115, 74 L. Ed. 457]). Your subcommittee recommends that section 113(a) (5) of the Revenue Act of 1932 be changed to conform to the language contained in the Revenue Act of 1926, *so that a uniform basis rule may be required in the case of property passing at death, whether real or personal.* (Italics ours.)

Petitioner contends that the sub-committee's report must be construed as if it read "all *vested* property" and the language of 113(a) (5), subsequently enacted, read accordingly, because the date of acquisition involved in Brewster v. Gage, supra, was that of a clearly vested interest. By this line of reasoning she arrives at the conclusion that Treasury Regulations 86, Article 113(a) (5)-1,[9] promulgated pursuant to § 62 of the Revenue Act,[10] is invalid because contrary to the clear meaning of the statute. We are unimpressed by this argument. The fact that Brewster v. Gage, supra, defined the date of acquisition as meaning the date of death, and the reliance of the sub-committee on that decision in its recommendation that § 113(a) (5) of the Revenue Act of 1932 be changed to conform with the language contained in the Revenue Act of 1926, is a clear indication of the legislative intent.

We think § 113(a) (5) fixed the decedent's death as the time of acquisition of all property. This conclusion gives effect to the concern, clearly evidenced in the sub-committee's report, that all increment subsequent to the decedent's death be taxed. It also derives support from the agreement, —evident in the hearings before the Committee on Ways and Means,—that decedent's death should be the "date of acquisition" of all property, the only question being whether, in view of the decision in Brewster v. Gage, supra, the language of § 113(a) (5) would accomplish that result.

---

[9] "Art. 113(a) (5)-1. *Basis of property acquired by bequest, devise, or inheritance.*—(a) *Property included.*—Section 113 (a) (5) applies—

"(1) to all property passing from a decedent by his will or under the law governing the descent and distribution of property of decedents; and

"(2) to property passing under an instrument which, under section 113(a) (5) is treated as though it were a will, but applies to such property only at the times and to the extent prescribed in section 113(a) (5).

"(b) *Basis.*—Under the law governing wills and the descent and distribution of the property of decedents, all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of him who takes the title was, at the date of death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise. Pursuant to this rule of law, section 113(a) (5) prescribes a single uniform basis rule applicable to all property passing from a decedent by will or under the law governing the descent and distribution of the property of decedents. Accordingly, the time of acquisition of such property is the death of the decedent, and its basis is the fair market value at the time of the decedent's death, regardless of the time when the taxpayer comes into possession and enjoyment of the property. For example, if distribution of personal property left by a decedent is not made until one year after his death, the basis of such property in the hands of the legatee is its fair market value at the time when the decedent died, and not when the legatee actually received the property; or, if the bequest is of the residue to trustees in trust, and the executors do not dis-tribute the residue to such trustees until five years after the death of the decedent, the basis of each piece of property left by the decedent, and thus received, in the hands of the trustees, is its fair market value at the time when the decedent dies; or, if the bequest is to trustees in trust to pay to A during his life-time the income of the property bequeathed, and after his death to distribute such property to the survivors of a class, and upon A's death the property is distributed to the taxpayer as the sole survivor, the basis of such property, in the hands of the taxpayer, is its fair market value at the time when the decedent died.

"The purpose of the Act, in prescribing a single uniform basis rule for the property acquired by bequest, devise, or inheritance, is, on the one hand, to tax the gain, in respect of such property, to him who realizes it (without regard to the circumstance that at the death of the decedent it may have been quite uncertain whether the taxpayer would take or gain anything); and, on the other hand, not to recognize as gain any element of value solely from the circumstances that the possession or enjoyment of the taxpayer was postponed. Such postponement may be, for example, until the administration of the decedent's estate is completed, until the period of the possession or enjoyment of another has terminated, or until an uncertain event has happened. It is the increase or decrease in the value of property reflected in a sale or other disposition which section 113(a) (5) recognizes as the measure of gain or loss.

[10] "The Commissioner, with the approval of the Secretary, shall prescribe and publish all needful rules and regulations for the enforcement of this chapter." 48 Stat. 700, 26 U.S.C.A. Int.Rev.Code, § 62.

We think the regulation is not inconsistent with the statute and is valid. Cf. Security Trust Co. v. Commissioner, 6 Cir., 65 F.2d 877. It embodies what we have indicated was an apt interpretation to make this part of the statute fit efficiently and consistently into the scheme of the revenue system as a whole. See also Van Vranken v. Helvering, 2 Cir., 115 F.2d 709, decided December 2, 1940; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. "In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect." Edwards' Lessee v. Darby, 12 Wheat. 206, 25 U.S. 206, 210, 6 L.Ed. 603. The first administrative interpretation of a provision as it appears in a new act often expresses the general understanding of the times or the actual understanding of those who played an important part when the statute was drafted.

Congress has thrice reenacted this section since this specific and authoritative interpretation of it was adopted and no change affecting our question has been made. The construction for which the petitioner contends must be rejected.

On the view we have adopted it is immaterial whether the interest which the petitioner acquired under her father's will was contingent or vested.

The order is affirmed.

The foregoing opinion was prepared for the court by Judge ARANT before his death, and, with minor changes not inconsistent with the conclusion reached, was concurred in by Judges ALLEN and HAMILTON.