**BICKERSTAFF v. ALLEN, Collector of Internal Revenue.**

Civ. No. 829.

United States District Court
M. D. Georgia, Macon Division.

Feb. 7, 1952.

Hatcher, Smith & Stubbs, Columbus, Ga. (J. Madden Hatcher, and A. Edward Smith, Columbus, Ga., of counsel), for plaintiff.

John P. Cowart, U. S. Atty., Macon, Ga., Andrew D. Sharpe, and Lyle M. Turner, Sp. Assts. to the Atty. Gen., for defendant.

DAVIS, Chief Judge.

This is a suit brought by the administrator of the Estate of Captain Robert Bradford Bickerstaff to recover income taxes assessed against and collected from the estate on account of income earned by the estate between January 6, 1945 and December 31, 1945.

Captain Robert Bradford Bickerstaff, hereinafter referred to as the deceased, died on January 5, 1945, while on active duty as a member of the armed forces of the United States.

During his lifetime, the deceased made his income tax returns on a calendar year basis. He was a member of several business partnerships which also operated on the calendar year basis.

For the calendar year 1945 an income tax return was filed for the deceased by R. H. Bickerstaff, the administrator of the estate of the deceased and the plaintiff in this action. The return reflected an income of $16,270.73. From this amount was deducted 5/365 parts or $222.90, leaving a taxable balance of $16,047.83. The deduction was explained by a notation to the effect that the "Taxpayer, United States Army Air Corps flyer, was killed in line of duty on 1/5/45. Therefore, deduction of income made which under regulations is forgiven."

On the basis of this return, the estate paid an income tax of $5,453.92 on behalf of the deceased, the payment being made on March 15, 1946. On October 16, 1947, the plaintiff filed a claim for refund of this entire amount on behalf of the deceased. The claim stated that the deceased had died while in active service as a member of the military forces of the United States, and, therefore, his income tax, for the taxable year 1945, paid by his Administrator, should be refunded to his Administrator, the claimant. This claim was al-

lowed by the Commissioner of Internal Revenue and the entire amount of taxes paid, together with interest thereon, was refunded in May, 1948. The only return filed for the year 1945, which is in the record here, was filed on behalf of the deceased and not his estate.

After the refund, the Commissioner assessed a deficiency against the estate of the deceased for the period January 6 to December 31, 1945, inclusive, in the amount of $5,453.92 (the amount of the tax originally paid), together with interest. This deficiency assessment against the estate was paid on September 7, 1950, together with interest in the amount of $1,442.22. On October 5, 1950, the estate of the deceased filed a claim for refund of the taxes assessed against and collected from it upon the income received by the estate between January 6 and December 31, 1945, inclusive. This claim for refund was denied and the plaintiff herein filed this action.

The only question in this case is whether, in the case of an individual coming within its provisions, Section 421, Internal Revenue Code, 26 U.S.C.A. § 421, forgives all of the income taxes due by both the deceased and his estate for the normal 12 months tax year within which his death falls, or whether the forgiveness clause of Section 421 is limited to those income taxes due by the deceased himself up to the date of his death. Income taxes for 1945 are the only taxes here involved. The deceased had previously reported and paid his income taxes on a calendar year basis. The question, as applied to the facts in this case, is whether Section 421 forgives all income taxes for the calendar year 1945, or does it forgive only those taxes owing on account of income earned prior to his death on January 5.

A decision of this question requires an interpretation of the phrase "the taxable year in which falls the date of his death". Section 421 provides that in the case of certain individuals (the deceased clearly falls within the class of individuals covered), the tax imposed by this chapter shall not apply with respect to the taxable year in which falls the date of his death. The taxpayer is here contending that the above quoted phrase refers to the ordinary tax year of the deceased and was not intended to distinguish between the taxable year of the deceased and the taxable year of his estate. The Defendant, on the other hand, urges that the phrase refers to only that portion of his ordinary taxable year between the close of his previous taxable year and the date of his death. In support of this position it is urged that the taxable year of an individual terminates with his death and that the new tax period is then that of the estate and not of the deceased. Thus, the Defendant argues that the only income taxes accruing on account of income earned in 1945 which are forgiven are those taxes resulting from income received prior to the death of the deceased on January 5.

The meaning of Section 421 seems to be clear. It must be assumed that Congress intended the words of the section to have their usual and customary meaning, unless some other meaning is clearly indicated. The words "in which falls" are fatal to the claim of the Defendant. If the term "taxable year" be narrowly construed as urged, that phrase would then be meaningless as it would be impossible for death to fall *in* any taxable year. Had Congress intended to say what the defendant urges that it has said, it would have been simple to use the words "the taxable year ending with the death of the serviceman". Similar language is used elsewhere in the Revenue Statutes when such is clearly the intent of Congress and such phraseology is not new to the draftsmen of Revenue Statutes. Sections 164 and 188, Internal Revenue Code, 26 U.S.C.A. §§ 164, 188. Congress has shown its awareness of the importance of carefully drafting Revenue Statutes. This same distinction is observed in Regulation 111, Section 29–421.1, which is the regulation construing Section 421, Internal Revenue Code. It seems clear to me that the words "the taxable year in which falls the date of his death" mean the ordinary tax accounting period of the taxpayer, which in this case was the calendar year 1945. The Defendant urges that this result is contrary to Congress' definition of the

term "taxable year". This Court does not find it to be so. Section 47(g) which the Defendant cites does not profess to define the term but merely states when returns should be made for periods of less than twelve months. Section 48(a), also relied on by the Defendant, does define the term "taxable year". It states as follows: " 'Taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. 'Taxable year' means, in the case of a return made for a fractional part of a year under the provisions of this chapter, or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made." This definition clearly shows that it is defining a taxable year for the purpose of making returns and in connection with the making of returns. It does not seem to be contrary to the above interpretation of Section 421.

It should also be noted that in wording Section 421 Congress did not say the taxes *of* the decedent for a certain period of time were to be forgiven. It was not so limited. The section says that in the case of certain individuals who come within its provisions "the tax imposed by this chapter shall not apply * * *"...As applied to the facts of this case, it would read, "In the case of Capt. Bickerstaff, the tax imposed by this chapter shall not apply with respect to the taxable year in which falls the date of his death." Had Congress intended to forgive only the taxes of Captain Bickerstaff personally, the Section could have been worded much more simply.

Section 421 was, of course, a temporary measure, as is the 1951 amendment applicable to the Korean situation. I do not think either was intended as a part of the general scheme of Revenue Laws. They were intended to confer additional benefits taxwise to the estates of servicemen who lost their lives while in the service of their country. To interpret this section as the Defendant urges, would be to treat each man differently, depending on the part of the year in which he died. It is difficult to believe that Congress meant the date of a boy's death to determine how much or how little this Section should reward him or his estate for his sacrifice. Section 421 should be reasonably construed so as to effectuate the intent of Congress.

The only case which lends support to the Defendant's position is that of Lloyd v. Delaney, 181 F.2d 941. That decision holds that the forgiveness provision of Section 421 did not inure to the benefit of a trust estate of which the deceased serviceman was a beneficiary. That decision was not based entirely on the fact that there were two separate tax entities involved, as the Defendant here urges. The controlling factor there seems to have been that in that case, under a decision for the taxpayer, benefits of the forgiveness clause would inure to others than those for whose benefit the statute was enacted. This point is discussed by the District Court in its opinion, Id., 86 F.Supp. 1001, 1002, and again in the opinion of the Court of Appeals, supra. The District Court in a careful analysis of Section 421 had this to say: "This construction of the statute accords with its purpose of giving a benefit to the estate of a deceased serviceman. A construction which included fiduciary taxes would often work capriciously and extend benefits to persons who could not conceivably have been intended to be the object of the bounty of the Congress or of the serviceman."

In the instant case, the ruling sought by the taxpayer does not seek benefits for any one other than the estate of the deceased. It seems clear that the statute was passed for the benefit of the estate of the deceased. Since the serviceman must be deceased before the benefits accrue, his estate could be the only intended beneficiary of the forgiveness feature of the Section. It seems to me that Congress intended to forgive all income taxes accruing during the twelve month period commencing with the close of the last taxable year prior to his death, whether those taxes were assessed against the deceased or his estate, and this Court so holds.

The taxes assessed against and collected from the plaintiff were wrongfully

843

assessed and collected and the Plaintiff is entitled to a refund thereof, together with interest thereon.

Let the Plaintiff present a judgment in accordance with this opinion.