**LUPIA'S ESTATE et al.**

v.

**MARCELLE.**

No. 19, Docket 22731.

United States Court of Appeals,
Second Circuit.

Argued May 13, 1954.

Decided July 2, 1954.

Leon London, New York City, for plaintiffs-appellees.

Walter Akerman, Jr., Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Frank J. Parker, U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellant.

Before CHASE, Chief Judge, and HINCKS and HARLAN, Circuit Judges.

HARLAN, Circuit Judge.

This appeal concerns the scope of the relief from income taxation given to individuals who died while serving with our Armed Forces, under former § 421 of the Internal Revenue Code, as amended by the Act of August 5, 1947. 61 Stat. 778, C. 496, 26 U.S.C.A. § 421. That Section, the full text of which is printed in the margin,[1] among other things forgives the income taxes of any "individual" who died on or after December 7, 1941 and prior to January 1, 1948, while serving in the Armed Forces of the United States or those of any of the other United Nations, "with respect to the taxable year in which falls the date of his death".

Raymond B. Lupia was killed in action at Leyte, P. I. on January 7, 1945, while serving as a Sergeant in the United States Army. He had filed his income tax returns on a calendar year basis. At the time of his death, Lupia was a member of a partnership which filed its income tax returns on the basis of a fiscal year ending June 30. Upon Lupia's death, the partnership credited to him $7,916.61, being his share of the partnership income to the date of his death, and to his estate $8,184.05, being his share of the income for the period January 7 to June 30, 1945. No income tax was paid, and none is claimed, on the first sum. Lupia's executors reported the $8,184.05 in a timely estate income tax return, and paid a tax thereon of $2,039.52, which they subsequently sought to recover in a refund suit

---

1. "Sec. 421. Abatement of Tax for Members of Armed Forces upon Death.

"In the case of any individual who dies on or after December 7, 1941, while in active service as a member of the military or naval forces of the United States or of any of the other United Nations and prior to January 1, 1948—

"(a) the tax imposed by this chapter shall not apply with respect to the taxable year in which falls the date of his death, or with respect to any prior taxable year (ending on or after December 7, 1941) during any part of which he was a member of such forces; and

"(b) the tax under this chapter and under the corresponding title of each prior revenue law for taxable years preceding those specified in clause (a) which is unpaid at the date of his death (including interest, additions to the tax, and additional amounts) shall not be assessed, and if assessed the assessment shall be abated, and if collected shall be credited or refunded as an overpayment."

against the Collector. The District Court granted summary judgment in favor of the estate, from which the Collector appeals.

For the Collector, it is contended that § 421 limits the forgiveness of income taxes to those payable for the period up to the date of the serviceman's death. Lupia's executors contend that the Statute forgives income taxes for the *full* taxable year in which death occurred.

The question has been the subject of conflicting decisions. Prior to the decision below, the taxpayer's position was upheld by former Judge Kennedy on a motion to dismiss the complaint in this action. Lupia's Estate v. Marcelle, D. C., E.D.N.Y.1952, 107 F.Supp. 552. The Court of Appeals for the Fifth Circuit, which Judge Byers declined to follow in the present case, has gone the other way. Allen v. Bickerstaff, 5 Cir., 1952, 200 F.2d 181.

The position of the Collector rests largely upon a technical reading of the Statute. His argument is that since a decedent and his estate are separate taxable entities, and since § 421 applies only "in the case of any *individual*," [2] the taxes forgiven are only those which relate to the period up to the date of the serviceman's death.

We think such a reading of the Statute too narrow and that it does violence to the ordinary meaning of the language used. The Statute forgives "the tax imposed * * * with respect to *the* taxable year *in which falls* the date of his death". To us this means the tax for the *full* taxable year in which death occurs. The Collector would have us interpret this provision as if it read "the tax imposed with respect to *that portion* of the taxable year *ending* with the date of his death." If we are to be technical, it seems reasonable to suppose that language of that import would have been used had the Congressional intent been the limited one which the Collector suggests. To overcome this difficulty, the Collector relies upon § 48(a), I.R.C., 26

U.S.C.A. § 48(a), which states that in the case of a return made for a fractional part of a year, "taxable year" as used in Chapter 1 means the period for which such return is made. This definition might conceivably have some application had Congress, in § 421, limited relief to the deceased serviceman's "last taxable year." But the use of the phrase "taxable year in which falls the date of his death" contemplates, we think, the existence of a period which may extend beyond the serviceman's death, i. e., his normal taxable year.

In our view, the phrase "In the case of any individual" was simply intended to refer to the category of those members of the Armed Forces embraced within the forgiveness provisions—that is those losing their lives in service on or after Pearl Harbor day and before January 1, 1948—and was not intended to draw a distinction between the income taxes of such an individual and those of his estate with respect to the taxable year in which death occurred.

Our interpretation of § 421 seems to be in accord with Congressional pronouncements as to the purpose of the Statute. In the report of the House Committee on Ways and Means on the 1947 Amendment, it was stated that "no income tax is imposed for the taxable year in which" a member of the Armed Forces dies. H.Rep.No. 1006, 80th Cong., 1st Sess., pp. 1–2; U.S.Code Cong. & Admin. Serv. p. 1612. Likewise, when § 154 of the present Internal Revenue Code, 26 U.S.C.A. § 154, was passed in 1951 to extend the § 421 tax relief to service personnel losing their lives in the Korean War, the Senate Report stated that under § 421 members of the Armed Forces "were forgiven their income tax with respect to the year of the death * * *" and described one of the purposes of the new legislation as being "the forgiving of income tax in the year of death of such individuals * * *" S.Rep.No. 781, 82d Cong., 1st Sess.; U.S.Code Cong. & Admin. Serv.

2. Italics throughout this opinion have been supplied unless otherwise indicated.

p. 2023. Moreover, the Treasury Regulation which deals with § 421 also appears to construe the statute as we do when it states: "the tax liability in the case of such individual * * * for the taxable year *in which* occurs the date of death is cancelled * * *" T.R. 111, § 29.421–1, 1948–2 Cum.Bull. 14, 24.

The Collector's narrow construction of § 421 also appears to be gainsaid by the broad sweep of its other provisions, as originally enacted and subsequently expanded. As originally passed, § 421 forgave not only those income taxes imposed for the taxable year in which death occurred, but also those due for any prior year which were *unpaid* at the time of death, even though such unpaid taxes related to a taxable year ending prior to December 7, 1941, or to a year when the deceased serviceman was not a member of the Armed Forces. And if such unpaid taxes were later collected, they were refundable. The 1947 amendment enlarged this relief by relieving such a deceased individual from, and making refundable, *all* income taxes paid for any taxable year ending on or after December 7, 1941 "during *any part of which*" the deceased was in the Armed Forces. And § 345 of the Revenue Act of 1951, 65 Stat. 517, C. 521, 26 U.S.C.A. § 345, enacted after the decision in Lloyd v. Delaney, 1 Cir., 1950, 181 F.2d 941, holding § 421 inapplicable to undistributed trust income, still further extended the scope of income tax relief accorded deceased servicemen so as to embrace, within certain limits, trusts for their benefit in respect of income accumulated at their death which was payable to their estates or lineal next of kin.

Thus, the march of this remedial legislation has ever been forward. One way of putting the Collector's position here is that it attributes to § 421 a purpose to equate the scope of the tax forgiveness with the end of a soldier's service during the taxable year in which he died. But since § 421 clearly does not equate the *beginning* date of forgiveness with commencement of a deceased soldier's service, it seems unlikely that such an equation was intended with respect to its *ending* date by death. So far as the supposed distinction between individual and estate income taxes is concerned, it is clear that the refunding provisions of § 421 can only enure to the benefit of the serviceman's estate. And it is difficult to reconcile the purpose of the 1947 amendment of § 421, *i. e.*, to put deceased servicemen who had paid their income taxes for previous taxable years ending after December 7, 1941 on the same basis with those who had not paid their taxes for such years (see Report of House Committee on Ways and Means, supra), with a construction which would make the extent of the tax relief for the taxable year in which death occurred depend upon the circumstance of when the serviceman happened to die.

We do not consider Lloyd v. Delaney, supra, at all apposite. As Judge Wyzanski noted in his opinion in the District Court, there is a great difference between a construction of the Statute which would apply it to undistributed *trust* income, and one which "accords with its purpose of giving a benefit to the estate of a deceased serviceman." 86 F.Supp. 1001 at page 1002. Here Lupia's estate seeks exemption from a tax which would have fallen on Lupia himself had he survived. But even if the deceased serviceman in the Delaney case had survived, it is clear that he would have incurred no tax liability with respect to the income accumulated in the trust, for which the trust sought exemption.

We are unable to agree with the decision of the Fifth Circuit in Allen v. Bickerstaff, supra, and must respectfully decline to follow it. We hold that § 421 forgives the income taxes of a deceased serviceman, coming within its provisions, for the full taxable year in which death occurred.

Affirmed.